Jon V. Harper (#1378)
**HARPER LAW, PLC**
P.O. Box 581468
Salt Lake City, UT 84158
Tel: (801) 910-4357
jharper@jonharperlaw.com

[**Additional counsel on signature pages**]
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| YEDID LAWI, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br> vs.<br><br>POLARITYTE, INC., DENVER LOUGH, and JEFF DYER,<br><br>             Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED<br><br>Case No. |

Plaintiff Yedid Lawi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (described below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding PolarityTE, Inc. ("PolarityTE" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired PolarityTE securities between March 31, 2017 and June 22, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. PolarityTE purports to be a commercial-stage biotechnology and regenerative biomaterials company focused on discovering, designing and developing a range of regenerative tissue products and biomaterials for the fields of medicine, biomedical engineering and material sciences. The Company's key development is SkinTE, which is intended to be used by physicians or other appropriate healthcare providers for homologous uses of skin tissues/integument. Patients who have suffered from an event, disease, process or acquired deficit that results in the functional loss or void of skin/integument systems can receive SkinTE as an adjunct and/or in place of split-thickness skin grafting, full-thickness grafting, temporizing skin coverage and/or skin substitute products.

3. PolarityTE is headquartered in Salt Lake City, Utah, and its stock trades on the NASDAQ under the ticker symbol "COOL."

4. On April 7, 2017, PolarityTE announced the closing of a transaction through which the Company purchased Dr. Denver Lough's ("Lough") pending Patent #14/954,335 (the "Patent") in exchange for over $104 million of PolarityTE stock.

5. Just one week prior to the closing of the transaction, on March 31, 2017, Dr. Lough received a notice of non-final rejection of the Patent by the U.S. Patent and Trademark

Office ("USPTO"). The USPTO mailed Dr. Lough a letter indicating the non-final rejection of the Patent on April 7, 2017—the same day that the transaction closed.

6. PolarityTE has never disclosed the fact of the Patent's non-final rejection status to the public.

7. On May 29, 2018, the Company filed an S-8 registration, which would allow management and promoters to sell hundreds of millions of dollars of common stock.

8. That same week, on June 4, 2018, the USPTO issued a final rejection for the Patent.

9. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, PolarityTE made false and/or misleading statements and/or failed to disclose that: (i) the USPTO issued a notice of non-final rejection of the Patent before PolarityTE acquired it in exchange for over $104 million of Company stock in April 2017; (ii) the USPTO issued a final rejection of the Patent on June 4, 2018; and (iii) as a result, PolarityTE's public statements were materially false and misleading at all relevant times.

10. On June 35, 2018, Citron Research published a report exposing the Defendants' failure to disclose the USPTO's March 31, 2017 notice of non-final rejection of the Patent and highlighting the USPTO's June 4, 2018 final rejection of the Patent.

11. On this news, PolarityTE's share price fell $10.59, or 27.3%, to close at $28.14 on June 26, 2018.

12. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

13. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

14. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

15. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as PolarityTE's principal executive offices are located within this Judicial District.

16. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

17. Plaintiff, as set forth in the accompanying Certification, purchased PolarityTE securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

18. Defendant PolarityTE is incorporated in Delaware, and the Company's principal executive offices are located at 615 Arapeen Drive, Suite 102, Salt Lake City, Utah 84108. PolarityTE's common stock trades on the NASDAQ under the ticker symbol "COOL."

19. Defendant Lough has served at all relevant times as PolarityTE's Chief Executive Officer ("CEO"), Chief Scientific Officer, and Chairman of the Board of Directors.

20. Defendant Jeff Dyer ("Dyer") has served as a member of the Board of Directors since February 2, 2017.

21. The Defendants referenced above in ¶¶ 19-20 are sometimes referred to herein collectively as the "Individual Defendants."

22. The Individual Defendants possessed the power and authority to control the contents of PolarityTE's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23. On April 7, 2017, PolarityTE announced the completion of a transaction between Majesco Acquisition Corp., a Nevada corporation and wholly owned subsidiary of the Company ("Acquisition Sub"), Polarityte, Inc., a Nevada corporation ("Polarityte NV") and Defendant Lough, the holder of all of the outstanding capital of Polarityte NV and the Company's CEO (the "Transaction").

24. As a result of the Transaction, Polarityte NV became a wholly owned subsidiary of the Company. Polarity NV is the owner of a novel regenerative medicine and tissue engineering platform developed and patented by Dr. Lough.

25. In connection with the closing of the Merger, on April 5, 2017, the Company issued Dr. Lough 7,050 shares of Series E Convertible Preferred Stock (the "Series E Shares")

5

which are convertible into an aggregate of 7,050,000 shares of the Company's common stock or 40.95% of the Company's currently issued and outstanding common stock on a fully diluted basis.

26. As Lough described in a correspondence with the SEC on February 22, 2017, his patent application #14/954,335 was the key asset exchanged through the Transaction:

> As a result, at closing, the patent application would be owned by the Company through its wholly owned subsidiary without the need for further assignments or recordation with the Patent Trademark Office. There was never any intent to acquire an ongoing business and no ongoing business was acquired. ***The asset is preserved in a stand-alone entity merely as a vehicle to provide the Company a seamless means to acquire the asset (a patent application)*** without undue cost, expense and time. Polarity NV has never had employees and therefore no employees will be acquired for the transaction.

(Emphasis added.)

27. Just one week prior to the Transaction closing, on March 31, 2017, Dr. Lough received a notice of non-final rejection of the Patent. The USPTO subsequently mailed Dr. Lough a letter indicating the non-final rejection of his Patent on April 7, 2017—the same day as the transaction closing:

| 14/954,335 | Methods for Development and Use of Minimally Polarized Function Cell Micro-Aggregate Units in Tissue Applications Using LGR4, LGR5 and LGR6 Expressing Epithelial Stem Cells | 18000.0001US U1 | |

**Transaction History**

| Date | Transaction Description |
|---|---|
| 04-27-2017 | Email Notification |
| 04-27-2017 | Email Notification |
| 04-27-2017 | Filing Receipt - Replacement |
| 04-27-2017 | Change in Power of Attorney (May Include Associate POA) |
| 04-25-2017 | Correspondence Address Change |
| 04-14-2017 | Mail Pre-Exam Notice |
| **04-07-2017** | **Mail Non-Final Rejection** |
| **03-31-2017** | **Non-Final Rejection** |
| 03-30-2017 | Information Disclosure Statement considered |

**Materially False and Misleading Statements Issued During the Class Period**

28. Throughout the Class Period, the Company failed to make a single disclosure pertaining to the Patent's non-final rejection status.

29. For example, in the Company's 2017 10-K Report, ended October 31, 2017, intellectual property risks were discussed in generic terms, never indicating the key Patent's filing status:

> Our success depends significantly on our ability to protect our proprietary rights in technologies that presently consist of trade secrets and patent applications. ***We currently have no issued patents relating to any of our product candidates.*** We intend to expand our patenting activities and rely on patent protection, as well as a combination of copyright, trade secret and trademark laws and nondisclosure, confidentiality and other contractual restrictions to protect our proprietary technology, and there can be no assurance these methods of protection will be effective. These legal means afford only limited protection and may not adequately protect our rights or permit us to gain or keep any competitive advantage. In addition, our presently pending patent applications include claims to material aspects of our activities that are not currently protected by issued patents. The patent application process can be time consuming and expensive. ***We cannot ensure that any of the pending patent applications we acquire, have acquired, or may file will result in issued patents.*** Competitors may be able to design around our patents or develop procedures that provide outcomes that are comparable or even superior to ours. . . . ***The failure to obtain and maintain patents and/or protect our intellectual property rights could have a material and adverse effect on our business, results of operations, and financial condition.*** We cannot be certain that, if challenged, any patents we ultimately obtain would be upheld because a determination of the validity and enforceability of a patent involves complex issues of fact and law. If one or more of any patents we obtain is invalidated and/or held unenforceable, such an outcome could reduce or eliminate any competitive advantage we might otherwise have had.

(Emphases added.)

30. Moreover, in a Fox Business interview published on October 24, 2017, Defendant Lough publicly represented the technology underlying the Company's SkinTE process—*i.e.*, the subject matter of the Patent—was already patented, stating that "[w]e found out this was sort of a novel technology, and, we ended up patenting it and being approached by a variety of investors . . ."

7

31. On August 8, 2017, Defendant Dyer contributed to a Forbes article titled "PolarityTE: Will This Biotech Be the Next Amazon or Tesla?" As the title indicates, Dyer chronicled the Company as the next breakthrough in the biotechnology field, attracting the interest and involvement of one the world's best biotech investors:

> PolarityTE's technology — if it works — will be extremely disruptive to incumbents . . . Despite the promise of PolarityTE's technology, Lough and Swanson would likely never have resigned from Hopkins to pursue the venture without an innovative financing model . . . Enter billionaire investor Philip Frost and his investment team. In the biotech sector, and especially in small cap ventures, there is no bigger name than Dr. Philip Frost. Across a career spanning over 40 years, Frost has built a net worth over 4 billion dollars, the vast majority of which derives from founding, buying, selling, and investing in biotechnology companies.

32. On May 29, 2018, the Company filed an S-8 registration with the SEC, which allows management and promoters to sell hundreds of millions of dollars of common stock.

33. On June 4, 2018, PolarityTE announced an offering of 2.1 million shares priced at $25.50 each. The Company stated that it intends to "use the net proceeds from the offering for research and development of its products and product candidates, efforts toward commercialization and required registration or approval of its products and product candidates with applicable regulatory authorities and general corporate purposes."

34. The statements referenced in ¶¶ 29-31 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the USPTO issued a notice of non-final rejection of the Patent before PolarityTE acquired it in exchange for over $104 million of Company stock in April 2017; (ii) the USPTO issued a final rejection of the Patent on June 4,

2018; and (iii) as a result, PolarityTE's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

35.   On June 25, 2018, Citron Research published a report exposing the Defendants' failure to disclose the Company's March 31, 2017 notice of non-final rejection of its Patent.

36.   The Citron Research report also highlighted the USPTO's final rejection of the Patent on June 4, 2018:

| Application No. | Title | Docket No. |
|---|---|---|
| 14/954,335 | Methods for Development and Use of Minimally Polarized Function Cell Micro-Aggregate Units in Tissue Applications Using LGR4, LGR5 and LGR6 Expressing Epithelial Stem Cells | 18000.0001USU1 |

**Transaction History**

| Date | Transaction Description |
|---|---|
| 06-14-2018 | Electronic Review |
| 06-14-2018 | Email Notification |
| 06-14-2018 | Mail Final Rejection (PTOL - 326) |
| **06-04-2018** | **Final Rejection** |
| 06-04-2018 | Information Disclosure Statement considered |
| 06-04-2018 | Information Disclosure Statement considered |

37.   Following the disclosures in the Citron Research Report, PolarityTE's share price fell $10.59, or 27.3%, to close at $28.14 on June 26, 2018.

38.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of PolarityTE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant

9

times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PolarityTE securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by PolarityTE or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of PolarityTE;

- whether Defendants caused PolarityTE to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of PolarityTE securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- PolarityTE common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold PolarityTE common shares between the time the Defendants failed to disclose or

11

misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against PolarityTE and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, PolarityTE and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51. PolarityTE and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of PolarityTE common shares during the Class Period.

52. PolarityTE and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of PolarityTE were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of PolarityTE, their control over, and/or receipt and/or modification of PolarityTE allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning PolarityTE, participated in the fraudulent scheme alleged herein.

53. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other PolarityTE personnel to members of the investing public, including Plaintiff and the Class.

54. As a result of the foregoing, the market price of PolarityTE common shares was artificially inflated during the Class Period. In ignorance of the falsity of PolarityTE's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of PolarityTE common shares

during the Class Period in purchasing PolarityTE common shares at prices that were artificially inflated as a result of PolarityTE's and the Individual Defendants' false and misleading statements.

55. Had Plaintiff and the other members of the Class been aware that the market price of PolarityTE common shares had been artificially and falsely inflated by PolarityTE's and the Individual Defendants' misleading statements and by the material adverse information which PolarityTE's and the Individual Defendants did not disclose, they would not have purchased PolarityTE's common shares at the artificially inflated prices that they did, or at all.

56. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

57. By reason of the foregoing, PolarityTE and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of PolarityTE common shares during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act Against The Individual Defendants

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of PolarityTE, and conducted and participated, directly and indirectly, in the conduct of PolarityTE's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

60. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to PolarityTE's financial condition and results of operations, and to correct promptly any public statements issued by PolarityTE which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which PolarityTE disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause PolarityTE to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of PolarityTE within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of PolarityTE common shares.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by PolarityTE.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 6, 2018

Respectfully submitted,

*/s/ Jon V. Harper*
Jon V. Harper
**HARPER LAW, PLC**
P.O. Box 581468
Salt Lake City, Utah 84158
Telephone: (801) 910-4357
Email: jharper@jonharperlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
1200 Ashwood Parkway
Suite 410
Atlanta, GA 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Attorneys for Plaintiff*